# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| MUNDHIR RIDHA and<br>SAEEDA ALI MUHSEN, | § | |
| | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:08-CV-2814 |
| | § | |
| TEXAS A&M UNIVERSITY<br>SYSTEM, et al., | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Plaintiffs bring this case alleging discrimination on the basis of race, color, national origin, and religion, as well as related claims.  Defendants have filed a Second Motion for Partial Judgment on the Pleading Pursuant to Rule 12(b)(1) and 12(b)(6) [Doc. # 27], and Plaintiffs have responded [Doc. # 30].[1]  Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that the Motion should be **granted in part and denied in part**.

---

[1]  Defendants previously filed a Motion for Partial Judgment on the Pleading Pursuant to Rule 12(b)(1) and (6) [Doc. # 10], but the motion was denied as moot after Plaintiffs filed a Second Amended Complaint. *See* Order, dated Dec. 29, 2008 [Doc. # 21]; Second Amended Complaint, filed Dec. 24, 2008 [Doc. # 20] ("Complaint").

## I.       BACKGROUND

Plaintiffs Mundhir Ridha ("Dr. Ridha") and Saeeda Ali Muhsen ("Dr. Muhsen") are husband and wife.    Dr. Ridha is Iraqi-Kurdish, and Dr. Muhsen is Iraqi-Arab; both Plaintiffs are Muslim.  Plaintiffs fled Iraq after the United States-led invasion in 2003.

In Iraq, Dr. Ridha was the Dean of the In-Vitro Fertilization Institute for Embryo Research and Infertility Treatment at the Baghdad Teaching Hospital, University of Baghdad.  He specializes in clinical reproductive physiology, human infertility, and in-vitro fertilization ("IVF").   Dr. Muhsen previously was a professor at the College of Medicine and the Director of the In-Vitro Fertilization Center Lab at the Baghdad Teaching Hospital.   She specializes in medical physiology, endocrinology, and IVF.

After leaving Iraq, both Plaintiffs eventually secured positions at Texas A&M University.  Dr. Ridha arrived in November 2004 as a Visiting Scientist with the College of Veterinary Medicine ("CVM").[2]  Beginning in August 2005, Dr. Ridha also served as a Research Scientist with Defendant Texas AgriLife Research ("Texas AgriLife").  Dr. Muhsen began at Texas A&M in June 2006 as Visiting Research

---

[2]       The CVM is named as a Defendant.  The Defendant's full name is the Texas A&M College of Veterinary Medicine, Department of Veterinary Physiology and Pharmacology.

Scientist with the CVM, and later held a position as Assistant Research Scientist with Defendant Texas A&M University System Health Science Center ("HSC").  She also served as a Research Scientist for the College of Medicine ("COM").[3]

Both Plaintiffs conducted research in the Reproductive Sciences Lab ("RSL") at Texas A&M.  The Directors of the RSL are Dr. Duane Kraemer and Dr. Mark Westhusin, both named as Defendants in this action.  Dr. Charles Long and Christy Bormann, also named as Defendants, work at the RSL.[4]

Plaintiffs allege that, while at Texas A&M, they were discriminated against, harassed, and terminated because of their race, color, national origin, and religion, and that Defendants retaliated when Plaintiffs complained about the Defendants' illegal actions.  They bring claims pursuant to Title VII,[5] Section 1981,[6] and Section 1983,[7] as well as state law claims for defamation and intentional infliction of emotional distress.  In support of these claims, Plaintiffs make various allegations, some of which can be summarized briefly as follows:

---

[3]     Defendant COM's full name is Texas A&M College of Medicine, Department of Molecular and Cellular Medicine.

[4]     The remaining individual Defendant, Dr. H. Richard Adams, is Dean of the College of Veterinary Medicine.

[5]     42 U.S.C. § 2000e *et seq.*

[6]     42 U.S.C. § 1981.

[7]     42 U.S.C. § 1983.

- Defendant Bormann threw animal urine and feces on Plaintiffs' holy prayer rugs and on chairs and desks in their offices.

- Defendants Westhusin, Long, and Bormann, along with others in the RSL, humiliated Plaintiffs and ridiculed their Muslim faith when Plaintiffs prayed on their prayer rugs.  When Dr. Muhsen went to the restroom to cleanse herself before prayers, Defendants and others made "loud turkey-bird sounds or battle cries," or "halhoolah,"[8] to ridicule her.

- Defendants Long and Bormann falsely accused Plaintiffs of destroying lab equipment.

- Dr. Long, after eating food that Plaintiffs had prepared for RSL students and staff, remarked that Plaintiffs were "good for nothing except cooking."[9]

- Dr. Westhusin remarked to students and staff that he "tr[ied] to stay in the most pristine side of the lab,"[10] presumably referring to the side in which Plaintiffs did not work.

Plaintiffs further allege that, when they complained of the harassment and discrimination, they were met with retaliation.  Dr. Ridha first lodged complaints about Defendants in June 2007, when he complained to Dr. Kraemer, a director of the RSL.  Plaintiffs allege that Dr. Westhusin, Dr. Long, and Ms. Bormann intensified the harassment in response.   In August 2007, Dr. Ridha sent a letter to State Representative Fred Brown describing his complaints.  At some point, Dr. Ridha also

---

[8]        Response, at 4.

[9]        *Id*. at 5.

[10]        *Id*.

complained to Dr. Adams, Dean of the CVM.  Plaintiffs allege that, after the complaint to Dean Adams, Dr. Kraemer told Dr. Ridha that he would be punished.

In August 2007, Dr. Kraemer terminated Dr. Ridha's position as a Research Scientist.  Plaintiffs allege that the termination was in retaliation for Dr. Ridha's complaints.  Dr. Ridha continued to work at Texas A&M without pay, in order to keep his visa status.  Plaintiffs allege that, in September 2007, Dr. Kraemer refused to allow them to continue working in the RSL facility, and that Drs. Kraemer, Westhusin, and Long required Plaintiffs to continue their research in a small trailer without running water, air conditioning, or a restroom.

In September 2007, Dr. Ridha complained to Dr. Karan Watson, Dean of Faculties and Associate Provost, and filed a formal complaint with Texas A&M.  The university conducted an official investigation, the results of which were summarized in a report on January 2, 2008.  The report concluded that RSL personnel did not discriminate against Plaintiffs, but also detailed humiliating and degrading treatment of Plaintiffs by Defendants and found that Defendants' behavior could have contributed to a hostile work environment.

On December 31, 2007, Dr. Muhsen's employment at Texas A&M was terminated and/or not reinstated.

Plaintiffs allege that, in their search for subsequent employment, Defendants

have responded to requests for references with false statements about Plaintiffs, also in retaliation for their complaints.

## II.   **RULE 12(b)(6) STANDARD**

Defendants seek dismissal under Rules 12(b)(1) and 12(b)(6).[11]   The Court will assume jurisdiction and evaluate Defendants' motion under the Rule 12(b)(6) standard.[12]

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted.[13]   The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true.[14]   "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief— including factual allegations that when assumed to be true raise

---

[11]   FED. R. CIV. P. 12(b)(1), 12(b)(6).

[12]   A defendant may challenge a court's jurisdiction over a claim through a motion under Rule 12(b)(1).  However, "[i]n circumstances where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case under either Rule 12(b)(6) or Rule 56." *Montez v. Dept. of Navy*, 392 F.3d 147, 150 (5th Cir. 2004) (internal quotations omitted).

[13]   *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002).

[14]   *Id.*

a 'right to relief above the speculative level.'"[15] Factual allegations are assumed to be true, even if doubtful in fact.[16]  Thus, where a complaint shows on its face that it is barred by an affirmative defense, it may be dismissed for failure to state a cause of action.[17]

In considering a motion to dismiss, a court must ordinarily limit itself to the contents of the pleadings and attachments thereto.  However, documents attached to a motion to dismiss may be considered by the court where the complaint refers to the documents and the documents are central to the plaintiff's claim.[18]

## III.  ANALYSIS

The Defendants in this action may be grouped as "University Defendants" and "Individual Defendants."

### A.    University Defendants

The University Defendants are:

1.    Texas A&M University System;

---

[15]    *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[16]    *Bell Atl.*, 550 U.S. at 555; *Lindquist v. City of Pasadena*, 525 F.3d 383, 386 (5th Cir. 2008).

[17]    *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[18]    *Kane Enters. v. MacGregor (USA), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).

2.      Texas A&M College of Veterinary Medicine, Department of Veterinary Physiology and Pharmacology ("CVM");

3.      Texas A&M College of Medicine, Department of Molecular and Cellular Medicine ("COM");

4.      Texas A&M University System Health Science Center ("HSC"); and,

5.      Texas AgriLife Research ("Texas AgriLife").

Plaintiffs's claims against the University Defendants fall into two main categories: (1) Title VII and (2) Sections 1981 and 1983.

## 1.      Title VII Claims

Plaintiffs bring Title VII claims against the University Defendants for discrimination,[19] harassment,[20] retaliation,[21] discharge and wrongful termination,[22] and hostile work environment.[23]  Their Title VII claims are based on race, color, religion, and national origin.[24]

In this Motion, Defendants seek to dismiss Plaintiffs' Title VII claims against three University Defendants:  Texas A&M University System, the CVM, and the

---

[19]     Complaint, at 13, ¶ 47.

[20]     *Id.*

[21]     *Id.* at 15, ¶ 52.  This retaliation claim is brought under the First Amendment as well as Title VII.

[22]     *Id.* at 16, ¶ 57; *id.* at 17, ¶ 60.

[23]     *Id.* at 17, ¶ 61.

[24]     The record does not contain either Plaintiffs' Charges of Discrimination with the EEOC or their Right to Sue Letters, and the parties' pleadings and briefing do not discuss the documents or their dates.

COM.  Defendants identify the HSC and Texas AgriLife as Plaintiffs' actual employers under Title VII, and are not seeking to dismiss these two Defendants.

### a.    Departments and Colleges within Texas A&M

The Court first addresses whether two Defendants—the CVM and the COM—are "employers" under Title VII.  The parties agree that Texas AgriLife employed Dr. Ridha, and that the HSC employed Dr. Muhsen.  However, Defendants challenge Plaintiffs' contentions that the CVM and the COM were also their employers.

Plaintiffs claim that the CVM was an additional employer for Dr. Ridha. Plaintiffs argue that the CVM shared control of Dr. Ridha's employment because: employment was offered to him in 2006 by Drs. Kraemer and Laine, both from the CVM; Drs. Kraemer, Westhusin, and Long, who controlled Dr. Ridha's day-to-day work schedule, project assignments, and grant money, all are from the CVM; and Dr. Kraemer of CVM terminated Ridha and allegedly forced him out of the RSL.[25]

Similarly, Plaintiffs claim that the COM was an additional employer for Dr. Muhsen.  Plaintiffs allege that Dr. Muhsen's employment was offered by Dr. Lori Bernstein of the College of Medicine; that Dr. Bernstein controlled Dr. Muhsen's day-to-day employment; that Dr. Muhsen was paid with money from Dr. Bernstein's

---

[25]     Response, at 23.

grant; and that Dr. Bernstein effectively terminated Dr. Muhsen by refusing to extend her contract after Dr. Ridha formally complained.[26]

The Fifth Circuit has held that determination of employer status for Title VII purposes requires a two-part analysis.[27]  First, the court must determine whether the defendant meets Title VII statutory definition of "employer," *i.e.*, "a person engaged in an industry affecting commerce who has fifteen or more employees . . .".[28]  Second, the court must determine whether the requisite employment relationship exists by applying a "hybrid economic realities/common law control test."[29]  The most important component of this hybrid test is the defendant's right to control the employee's conduct, including whether the defendant has the right to hire, fire, supervise, and set the work schedule for the employee.[30]  The economic realities

---

[26]   *Id.* at 24.

[27]   *Muhammad v. Dallas Cty. Cmty. Supervision and Corr. Dep't.*, 479 F.3d 377, 380 (5th Cir. 2007).

[28]   42 U.S.C. § 2000e(b).

[29]   *Muhammad*, 479 F.3d at 380 (internal quotation marks omitted) (quoting *Deal v. State Farm Cty. Mut. Ins. Co.*, 5 F.3d 117, 118-19 (5th Cir. 1993)).  The *Muhammad* Court reversed a district court's dismissal of a defendant pursuant to Rule 12(b)(6), noting that the hybrid test is "necessarily a fact-specific inquiry and is therefore typically applied in a summary judgment context, in which a court is permitted to go beyond the pleadings and examine the state law and the evidence relevant to the employment relationship."  *Id.* at 382 (footnotes omitted).

[30]   *Id.*

component of the hybrid test focuses on whether the defendant in question paid the employee's salary, withheld taxes, provided benefits, and set terms and conditions of employment.[31]

On this record, dismissal of the CVM and COM is not appropriate. Plaintiffs have alleged, as recited above, that these two Defendants exercised control over Plaintiffs' day-to-day employment activities. Because Defendants have offered no response to this argument, they clearly have not met their burden for dismissal under Rule 12(b)(6). Moreover, as stated in *Muhammad*, this inquiry is fact-specific and typically applied in a summary judgment context.[32]

At this point, therefore, the Court need not address Plaintiffs' argument, advanced under theories of "integrated enterprise" or "joint employer status," that each Plaintiff was employed by two Defendants.[33] However, because this issue will return at a later stage of this litigation, the Court directs the parties to Fifth Circuit authority holding that "integrated enterprise" and "joint employer" theories do not apply to government employers such as the University Defendants.[34]

---

[31]    *Id.*

[32]    *Muhammad*, 479 F.3d at 382.

[33]    *See* Response, at 22-24.

[34]    *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 344 (5th Cir. 2007) ("a
(continued...)

**b.**      **Texas A&M University System**

Regarding Texas A&M University System, however, Plaintiffs have not alleged

facts sufficient under *Muhammad* to state a claim under Title VII.  In particular,

Plaintiffs have not alleged that the Texas A&M University System exercised control

over Plaintiffs' employment.  Rather, in the section of their brief discussing Texas

A&M System, Plaintiffs allege as follows:

> Responsibility for the actions of the University Defendants and the
> Individual Defendants rests with the Board of Regents.  The Board of
> Regents promulgated the policies and procedures for the College
> Defendants.  And the Board of Regents oversaw the actions and
> decisions of both the College Defendants and the Individual Defendants.
> As such, they are subject to liability for the Defendants' wrongdoing as
> described herein.[35]

Even if proven at trial, these allegations—that the Texas A&M University System has

promulgated policies and procedures, and has overseen actions of other

Defendants—would be inadequate to establish that Texas A&M University System

---

[34]      (...continued)
government employer . . . may not be considered part of an integrated enterprise under
the *Trevino* framework") (citing *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 n. 10
(5th Cir. 1983)); *Garrett-Woodberry v. Miss. Bd. of Pharmacy*, 300 F. App'x 289, 291
(5th Cir. 2008) (*Trevino*'s "single employer" test was developed for application to
private entities and does not apply to governmental subdivisions), *petition for cert.
filed*, 77 U.S.L.W. 3596 (Feb. 13, 2009) (No. 08-1267).  *See Gogreve v. Downtown
Dev. Dist.*, 426 F. Supp. 2d 383, 389-90 (E.D. La. 2006) (Africk, J.) (joint employer
test may not be applied to governmental subdivisions) (citing cases).

[35]      Response, at 21 (quoting Complaint, ¶ 24).

is an employer under Title VII.   In particular, these facts could not satisfy *Muhammad*'s second prong, or the "hybrid economic realities/common law control test," which focus on the defendant's right to control the employee's conduct.[36]

All Title VII claims against the Texas A&M University System are dismissed. However, the Court will grant Plaintiffs an opportunity to amend its pleadings in light of this ruling.

### 2.    Section 1983 Claims for First Amendment Violations

Plaintiffs bring First Amendment claims against the University Defendants for retaliation, discriminatory discharge, retaliatory discharge, and wrongful termination.

Defendant Texas A&M University System is a state university, and all other University Defendants are components of the university.  The Eleventh Amendment to the United States Constitution bars suit against a state or a state agency, unless the state consents to be sued.[37]   Although an exception to Eleventh Amendment immunity exists for claims for prospective relief,[38] Plaintiffs seek only damages, and not

---

[36]     *See Muhammad*, 479 F.3d at 380.

[37]     *McIntosh v. Partridge*, 540 F.3d 315, 321 n.3 (5th Cir. 2008) (a state department or agency, or state officers sued in their official capacity, is considered the state for Eleventh Amendment purposes); *Nelson v. Univ. of Tx. at Dallas*, 535 F.3d 318, 320 (5th Cir. 2008) (state university is considered the state for Eleventh Amendment purposes).

[38]     *Nelson*, 535 F.3d at 320 (citing *Ex parte Young*, 209 U.S. 123 (1908)).

injunctive relief.[39]

Plaintiffs' Section 1983 claims against all University Defendants are dismissed.

## B.   <u>Individual Defendants</u>

The Individual Defendants are:

1.   Dr. H. Richard Adams, Dean, College of Veterinary Medicine;
2.   Dr. Duane Kraemer, Director of Research Science at the RSL;
3.   Dr. Mark Westhusin, Director of RSL;
4.   Dr. Charles Long, Assistant Director of the RSL; and,
5.   Christy Bormann, Lab Technician at RSL.

Plaintiffs bring claims against the Individual Defendants for violations of Sections 1981 and 1983, defamation, and intentional infliction of emotional distress. Defendants argue that all claims brought against the Individual Defendants should be dismissed.

As a preliminary matter, to the extent that Plaintiffs bring Section 1983 and 1981 claims against individual Defendants in their official capacity, these claims are barred by Eleventh Amendment immunity, for the reasons discussed *supra* in Section III.A.2.

## 1.   **Claims for Violations of Sections 1981 and 1983**

Plaintiffs' Section 1981 and 1983 claims against the Individual Defendants are

---

[39]   Complaint, at 21-22.

brought for discrimination;[40] retaliation;[41] discriminatory discharge, retaliatory discharge, and wrongful termination;[42] hostile work environment;[43] and violation of Plaintiffs' First Amendment right to freedom of religion.[44]

Defendants raise two arguments relevant to these claims.  First,  Defendants argue that Plaintiffs' Section 1981 claims are limited to race discrimination only, and may not be brought for alleged discrimination on the basis of national origin or religion, for claims of wrongful discharge or termination, or for claims of hostile work environment.   Second, Defendants argue that the claims are barred by qualified immunity.

### a.    Limits on Section 1981 Claims

Plaintiffs plead Section 1981 claims based upon race, color, national origin, and religion.   Section 1981 protects only against discrimination based on race, and not

---

[40]    Complaint, at 14, ¶ 48 (discrimination claim brought under Section 1981 and based on race, color, national origin, and religion).

[41]    *Id.* at 15, ¶ 52 (retaliation claim brought under Section 1981 and the First Amendment).

[42]    *Id.* at 16, ¶ 57 (discharge and termination claims brought under Section 1981 and the First Amendment).

[43]    *Id.* at 17, ¶ 61 (hostile work environment claim based on Section 1981).

[44]    *Id.* at 18, ¶ 65-67 (free exercise claim based on the First Amendment).

national origin or other categories.[45]  On the other hand, the Supreme Court has made

clear that, under Section 1981, "race" is broadly defined:

> Based on the history of § 1981, we have little trouble in concluding that
> Congress intended to protect from discrimination identifiable classes of
> persons who are subjected to intentional discrimination solely because
> of their ancestry or ethnic characteristics.  Such discrimination is racial
> discrimination that Congress intended § 1981 to forbid, whether or not
> it would be classified as racial in terms of modern scientific theory.[46]

Plaintiffs therefore may proceed with Section 1981 claims based on race; all other

claims brought pursuant to Section 1981 are dismissed.[47]  Plaintiffs' ethnicity is

cognizable as race under Section 1981.

Defendants also assert in a section heading, but do not argue in the text of the

section, that Plaintiffs may not bring claims under Section 1981 for discriminatory

discharge, wrongful termination, or hostile work environment.  As for Plaintiffs'

claims for discriminatory discharge and wrongful termination, the Court cannot

discern a substantive difference between these claims and Plaintiffs' claims for

discrimination and retaliation, except for the fact that these claims also rely upon the

---

[45]   *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987).  *See Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006) ("Section 1981 applies to allegations of discrimination based on race but not national origin").

[46]   *St. Francis*, 481 U.S. at 613.  The *St. Francis* Court held that "Arab" is a protected race under Section 1981.  *Id.* at 612.

[47]   A claim of discrimination based upon religion is not cognizable under Section 1981. *Runyon v. McCrary*, 427 U.S. 160, 167 (1976).

First Amendment.  The claim under Section 1981 may be duplicative of Plaintiff's

discrimination and retaliation claims; however, given the absence of any citation or

analysis from Defendants, dismissal is unwarranted at this stage.

As for Plaintiffs' hostile work environment claim, this claim may be brought

under Section 1981.[48]

### b.      Qualified Immunity

Defendants assert that Plaintiffs' Section 1981 and 1983 claims brought against

the Individual Defendants in their individual capacities are barred by qualified

immunity.  When a public official claims qualified immunity, the court must address

two issues: (1) whether the plaintiff has made a sufficient showing that the official

violated a "clearly established" right; and (2) if so, whether the official's actions were

"objectively reasonable in light of the clearly established right."[49]  When, as here,

qualified immunity is asserted in a motion to dismiss, "it is the defendant's conduct

---

[48]      *See Jones v. Donnelly & Sons Co.*, 541 U.S. 369, 383 (2004) (after amendments by
1991 Civil Rights Act, hostile work environment claims are actionable under § 1981);
*Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 468 n.11 (5th Cir.), *cert. denied*, 534
U.S. 948 (2001) (after the 1991 Civil Rights Act, both Title VII and § 1981 apply to
terms and conditions of employment).

[49]      *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 337 (5th Cir. 2003) (citing *Siegert v.
Gilley*, 500 U.S. 226 (1991)).

*as alleged in the complaint* that is scrutinized for objective legal reasonableness."[50]

Defendants' briefing on qualified immunity cites relevant case law, but contains no reference to the facts of the case at bar, and no analysis specific to this case. Defendants have made no argument that Plaintiffs have not alleged a violation of a "clearly established" right, nor have they argued that their actions were "objectively reasonable" in light of the clearly established right.

Plaintiffs have brought the following causes of action against the Individual Defendants, all of which are based on clearly established legal theories: discrimination under Section 1981;[51] retaliation under Section 1981;[52] discriminatory discharge, retaliatory discharge, and wrongful termination under Section 1981 and the First Amendment;[53] hostile work environment under Section 1981;[54] and the right to free

---

[50]   *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (emphasis original) (internal quotation marks and citation omitted).

[51]   *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005); *Patel v. Midland Mem'l Hosp. & Med. Ctr.,* 298 F.3d 333, 342 (5th Cir. 2002).

[52]   *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 n.8 (5th Cir. 2003).

[53]   As stated above, the Court cannot discern a substantive difference between this Section 1981 claim and Plaintiffs' Section 1981 claims for discrimination and retaliation. *See Septimus*, 399 F.3d at 609; *Foley*, 355 at 340 n.8; *Patel*, 298 F.3d at 342.  The First Amendment protects public employees against retaliation for speech such as complaints.  *Serna v. City of San Antonio*, 244 F.3d 479, 482 (5th Cir. 2001) (citing *Harris v. Victoria Independent School Dist.*, 168 F.3d 216, 220 (5th Cir.1999)).

[54]   *Jones v. Donnelly & Sons Co.*, 541 U.S. 369, 383 (2004);   *Turner v. Baylor*
                                                                    (continued...)

exercise of religion under the First Amendment.[55]

As to the second prong, Defendants fail to make any argument that their actions were "objectively reasonable" in light of these clearly established rights. The Court at this stage must assume that all of Plaintiffs' allegations are true. Accordingly, dismissal on qualified immunity grounds is unwarranted.

### 2.      Defamation Claim Against Four Individual Defendants

Plaintiffs bring a claim for defamation against Defendants Westhusin, Long, Kraemer, and Bormann.[56] Under Texas law, to recover on a defamation claim as a private individual, a plaintiff must prove: (1) the defendant published a false statement; (2) the statement was defamatory in that it damaged the plaintiff's reputation, exposing him or her to "public hatred, contempt, ridicule, or financial injury"; and (3) the defendant made the statement with negligence as to its truth.[57] Under Texas law, libel is defamation in written or printed form, whereas slander is

---

[54]      (...continued)
*Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007).

[55]      *Cornerstone Christian Schools v. Univ. Interscholastic League*, 2009 WL 724531 (5th Cir. Mar. 20, 2009).

[56]      Complaint, at 19, ¶ 68.

[57]      *Green v. CBS Inc.*, 286 F.3d 281, 283 (5th Cir. 2002) (citing *Dolcefino v. Randolph,* 19 S.W.3d 906, 917 (Tex. App. – Houston 2000, pet. denied)); *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).

defamation that is orally communicated or published.[58]

Defendants argue that Plaintiffs' allegations do not state a claim for defamation because the alleged statements are opinions, not facts.  When determining whether a statement is an actionable statement of fact or a constitutionally protected opinion, a court must consider whether the statement in question makes or implies a factual assertion that is objectively verifiable.[59]  In so doing, the court is to consider the entire context in which the statement was made.[60]

Plaintiffs' factual allegations relevant to defamation are: Defendants' statements that Plaintiffs were "good for nothing except cooking," implying that Plaintiffs were not qualified for their research positions; Defendants' reference to the "pristine side of the lab," implying inadequate hygiene practices; making loud "turkey-bird sounds or battle cries" called "halhoolah," implying Plaintiffs' membership in a militant or radical Islamic sect; falsely accusing Plaintiffs of breaking laboratory equipment, implying that Plaintiffs were careless, as well as dishonest when they denied having broken the equipment; and, making false statements about Plaintiffs' professional abilities to other educational institutions in response to requests for employment

---

[58]   *Halbert v. City of Sherman, Tx.*, 33 F.3d 526, 530 (5th Cir. 1994).

[59]   *Bentley v. Bunton*, 94 S.W.3d 571, 579-81 (Tex. 2002) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990)).

[60]   *Id.* at 481.

recommendations for Plaintiffs.

Taking Plaintiffs' allegations as true, Plaintiffs have stated a claim for defamation. The alleged defamatory statements include or imply verifiable facts, including Plaintiffs' scientific skills, professional behavior, and hygiene standards in a scientific laboratory.[61]

### 3.    IIED Claim Against Five Individual Defendants

Plaintiffs bring a state law claim for intentional infliction of emotional distress against all five Individual Defendants.[62]

In order to recover damages for intentional infliction of emotional distress under Texas law, a plaintiff must prove (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and, (4) the resulting

---

[61]    Defendants also argue that Plaintiffs' defamation claim should be dismissed because it is barred by official immunity under state law. In Texas, public officials are protected from suit arising from the performance of (1) their discretionary duties (2) in good faith (3) within the scope of their authority. *Bloss v. Moore*, 269 F. App'x 446, 448 (5th Cir. 2008) (citing *Ballantyne v. Champion Builders, Inc.*., 144 S.W.3d 417, 422 (Tex. 2004)). Taking all of Plaintiffs' allegations as true, Defendants have not established as a matter of law that official immunity bars Plaintiffs' defamation claim. To take one example, Plaintiffs' allegations that Defendants defamed them by accusing them of having inadequate research skills and hygiene practices present factual questions relevant to Defendants' "good faith" in performance of their duties.

[62]    Complaint, at 20, ¶ 76.

emotional distress was severe.[63] As explained by the Fifth Circuit:

> To be extreme and outrageous, conduct must be so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Ordinary employment disputes will not support a claim for intentional infliction of emotional distress.  In the employment context, extreme conduct exists only in the most unusual of circumstances.  There is no litmus test for outrageousness; whether conduct was outrageous and extreme must be analyzed on a case-by-case basis.[64]

Plaintiffs' claim for intentional infliction of emotional distress is supported by their allegation that Defendants desecrated Plaintiffs' offices and holy prayer rug with animal urine and feces, as well as the allegation that Defendants continually taunted, ridiculed, and harassed Dr. Muhsen before and during her prayers.

At this stage of the litigation, Plaintiffs have alleged sufficient facts to state a claim upon which relief could be granted.[65]

## IV.   **CONCLUSION**

For all of the foregoing reasons, it is hereby

---

[63]   *Lane v. Halliburton*, 529 F.3d 548, 564 (5th Cir. 2008); *Hughes Training Inc. v. Cook*, 254 F.3d 588, 594 (5th Cir. 2001).

[64]   *Hughes Training*, 254 F.3d at 594 (internal quotation marks and citations omitted).

[65]   As with the defamation claim, Defendants argue that Plaintiffs' claim for intentional infliction of emotional distress is barred by official immunity under state law.  Taking all of Plaintiffs' allegations as true, Plaintiffs allege facts sufficient to prove that one or more of the three elements for immunity (*e.g.*, good faith) is not satisfied.  *See Bloss*, 269 F. App'x at 448; *Ballantyne*, 144 S.W.3d at 422.  Dismissal based on official immunity therefore is unwarranted on this record.

**ORDERED** that Defendants' Second Motion for Partial Judgment on the Pleading Pursuant to Rule 12(b)(1) and (6) is [Doc. # 27] is **GRANTED IN PART and DENIED IN PART**. Specifically, Texas A&M University System is **DISMISSED**; if Plaintiffs wish to file amended pleadings against Texas A&M University System, they must do so on or before **May 29, 2009**. All Section 1983 claims brought against the University Defendants, or against Individual Defendants in their official capacities, are **DISMISSED**. Section 1981 claims that are not based upon race are **DISMISSED**.

SIGNED at Houston, Texas, this **15<u>th</u>** day of **May, 2009**.

<u>Nancy F. Atla</u>
Nancy F. Atlas
United States District Judge